Jotel, do you want the record site? Yes, please. It's 30-19, page 2 of 3 for the D.A.R. for Ellison. And it's 32-30, page 15 of 21 for McKinnon. Those are the D.A.R.s. Thank you. So there is a disciplinary action report. Yes. There is. By who? I don't know. We'll see who. I bet it's from Smartly. Yeah. Because he's trying to use the phone. I don't know. Yeah. Do we have counsel here on the third case? She's coming up. Oh, okay. Thank you. Got a problem? We can just barely get through those things. I apologize. No, that's quite all right. Would you rather make the argument seated? Would that be easier for you? I'll stand here. Thank you. Thank you. Thank you. May it please the Court, I'm Cliff Hudson. As you proceed, if for any reason you decide you want to sit down, you just let me know. Thank you. We're here on appeal from the Rule 12b motion. My client is an approximately 15-year law enforcement officer who lost his job and then lost his certification through a false report by the defendant's appellees to the Georgia Peace Officers Standard and Training Council. One of the issues that we have is that the trial court and district court in ruling on the procedural due process claim ruled that since I did not include Georgia Peace Officers Standard and Training Council as a party, then there could not be a deprivation of my client's due process. With all due respect, that's like saying that at a trial, if a witness gives false testimony, the trial judge has to be included as one of the co-defendants. That simply should not be and is not the standard. The false report and the basis of the false report is what caused the deprivation of the officer's certification. Of course, without certification, he can't practice his profession. Not to mention the fact that the false report cast him in a terrible light that would affect his ability to get a job even when he got his certification back. The district court acknowledged that there was a due process claim if Post was involved. But that also goes on to say that we had a writ of mandamus at the city level to seek a writ on his termination. But by the time it got to Post, we couldn't get a writ of mandamus. Post has a different procedure entirely. Respectfully, that's one of the issues we have involved. The other issues, of course, deal with the truthfulness, the procedures that went through, and the way this officer was treated. We have an allegation under Title VII where we allege in the complaint that he, as a black officer or African American, was treated more harshly than his white counterparts and that the city of Alpharetta has a history of this type of conduct. The district court ruled that that was not sufficient to get passed in Rule 12b, Motion. Help me, if you would, with the due process issue. Particularly, the district court found that you could have filed for a writ of mandamus in Georgia state court and that this process would have provided a meaningful opportunity to be heard, but the nurse never alleged that he had done so. That's what the trial court said. Yes, sir. Is that wrong, and if so, why? Well, it's wrong in two places. First, the writ of mandamus was not available before a Post hearing. Second, in an employment situation with the city of Alpharetta, a writ of mandamus would have only required the city to have a hearing, which we were already in the process of. If you're going to appeal it, we could have appealed to the Superior Court, but the standard there would simply be that if there's any evidence to support the city's position, the court has to uphold it. So a writ of mandamus would not have been an adequate or complete remedy. Is that a reason not to exhaust the remedies? In other words, do you have a cause of action when you haven't exhausted? With all due respect, if it's a futile effort, there's certain practical sides of it, not to mention the cost of it, but a writ of mandamus in this case I don't believe would be an appropriate matter. I don't believe it's an option that we would have at this stage of the proceedings. It went straight from termination, to which he had no right of appeal, to post and post-automatic revocation. When you say post, you mean after he was terminated? Yes, ma'am. Okay. The City of Alpharetta forwarded a report, as we allege in our complaint. The report was totally false, and as a result of that report, post revoked his certification, which is standard procedure for post once they get a complaint. I'm sorry, I'm about to go outside of the record. I apologize to the court. Well, you don't get a hearing before the post at all? No. You can't request an appeal of the revocation, is what you're telling us? No, ma'am. You can request an appeal, but post procedure is when they get the complaint, if it falls within a certain area, such as this one. They revoke the certification. They automatically revoke it. After you revoke revocation, you may then appeal it. Do you appeal it to the Superior Court? No, it's appeal to post. It's appeal internally within post? Yes, ma'am. Do they have a review board or something like that? Yes, ma'am. Did you appeal that? Yes, ma'am. Okay, so you did appeal that. Yes, ma'am. Then if they uphold the revocation, what happens next? Can you go to Superior Court then? There is a two-step process, and I apologize if I'm a little vague because they've changed the procedures over the last couple of years. But primarily, you get a review board that makes a recommendation after they've already revoked the certification. Then, based upon the review board, they can either reinstate the certification or recommend some lesser punishment or revocation. Then you can appeal that. Once that is done, you go before a board, a post board. And similar to what we're doing now, we have oral argument before the board. The board then makes a ruling, and only then do you go from there to the court system on appeal. And that's to Superior Court? Yes, ma'am. And did you do all of that? We didn't have to. Once we got to the second level, the certification was put on probation. The appellate was put on probation, required to do certain things such as additional training or so forth. And then his certification was eventually reinstated. All of this was filed in the case we're going to appeal here. So he got it reinstated through that appeal process? Yes, ma'am. So does he have it now? Yes, ma'am. Okay. And is he working as a police officer or he's chosen to do something else? He's not working as a police officer yet. Okay. With this black mark on his record, it's hard to get a job. Okay. But he does have his post certification back? Yes, ma'am. Okay. Did you want to make any argument about the equal protection of the Title VII hostile work environment issues? Again, it's a Rule 12B motion. We feel that we should have been allowed to present evidence and convert it to a Rule 56 motion so that we could present the disparity of treatment, the Title VII claim in more full detail. Well, the problem on the Title VII claim is that you didn't identify a similarly situated white employee. And he said it was systemic and there were many officers. And I guess the question here becomes do you have to at least identify one? Why your client couldn't at least identify one that had been guilty of similar or certain conduct but was not disciplined in the manner your client was, that is, without progressive discipline right to termination? Why was it impossible in light of your other allegations that this had been going on for years, it was pervasive and so forth, did you not identify one other person? You could have maybe gotten discovery and found more. Well, there was no discovery because this was about me. We know that. I understand. The question is in the complaint why you couldn't have identified at least someone because you can think about it. The law is everybody can say other people were treated differently. It requires to be plausible that you at least name one person. I apologize first for talking over the court. In this case, the particular fact situation is so unique that I doubt you'd find in any police department a similar situation. That's why we argue that a pattern as opposed to a particular disciplinary action where given a discovery or a Rule 56 motion, we could have presented tons of different categories where one officer had a slap on the wrist, the other one got terminated and so forth. And the only primary difference being race. And why do you say this is so unique? I think I know, but I'm just curious. What do you say about this that made it so unique that you doubt you could have found a similar situation? I don't believe we would find where a courtesy ride to an intoxicated citizen wound up in a termination offense, especially in this case where the circumstances were so unique. Certainly, we have disciplinary problems within police departments and so forth. I'm not following you. Is that because police officers normally don't do it or they do it all the time and nothing happens? They do it all the time. Okay. A courtesy ride is common practice in most departments. So then why couldn't you have identified somebody who had done it all the time in the complaint to show a similar situation? Because we don't believe anybody else got fired because of it. Now, the whole point is you are saying I'm sorry. Again, I'm talking over and I apologize. You're not talking. You're answering the questions. But that's the whole point is that it happens all the time. They didn't get fired. So that would show your client was fired based on his race, not on the conduct. So why couldn't you identify? I'm just trying to understand it. One other person. I would have had to engage in discovery, number one, to find a policy, which, of course, we don't get until we get beyond this. Second, it's not just a courtesy ride discrimination situation. We're saying that there are circumstances where you have a two-level situation where one officer, one black officer, when they do minor violations, are terminated. White officers are not. They're given lesser discipline. And the city policy itself calls for progressive discipline. In this case, the appellant has never been disciplined in 15 years and he does a minor violation if there was a violation. And we deny there is. And he's fired. And he loses certification. That's totally disproportionate. Counsel, I think you're eating into your rebuttal. So we'll give you the full five minutes for rebuttal. And then give you a chance to be heard after we hear from Mr. Bean. Thank you. Good morning, Your Honors. My name is Brent Bean. May it please the Court, I represent the defendants, I believe, in this case. We are here on an appeal from a motion to dismiss. So while a lot of the facts that counsel recited are perhaps interesting, they weren't alleged in the complaint. We're dealing with the four corners of the complaint here. He's had two bites at this apple with Judge Thrash down in the district court. The first complaint was dismissed because it was a shotgun complaint. I think you can see how that might have happened here. The second complaint following an order describing more precisely what it is he needs to plead was dismissed under Iqbal and Twombly. And it should have been. Because the allegations of fact here, to the extent they even exist, are conclusions like Plaintiff was treated more harshly. Well, that's a conclusion. It's a conclusory allegation. How was he treated more harshly? By whom? When? Where? Some facts that make this claim plausible. That's the standard. It isn't just notice pleading. I have a claim. I'm aggrieved. Under Rule 8, Iqbal and Twombly require that facts be pled. Not that you have to plead everything you know or take discovery on it, although I will note in this case this is a public employer subject to an Open Records Act. But you've got to plead facts that support the claims. He serially didn't do it here. It's the paradigm of a kind of complaint that should be dismissed under Rule 12b-6. Now we learn this morning, for the first time I wasn't aware of this, that the man has his post certificate. Where's the property deprivation? He hasn't lost anything. So that claims out. To deal with the due process claim, what I think is Well, that's not part of the record evidence before us, is it? Well, I agree, but Nevertheless, I can't consider what's stated here that isn't rooted in the record. I agree with you, and so I would say to that fact, in order to state a claim for a due process violation of a property interest to the extent that's actually pled here, one of the elements is state action. We didn't deny him any property. We're not post. There's a district court straight on point here from the Northern District that says, hey, you didn't sue post. Post is the one that denied you your property. You can't sue the municipality. They didn't do it. Now, he wants to string along the fact that there's a false report that caused that. Okay, maybe, maybe not. But there's no facts that are pled that show that causation. In fact, there's no facts that are pled to show the report was false. That, too, is a conclusive reallegation of fact. It just says there's a false report. And now, you know, he also includes in there that, well, some of these violations were actually minor. Well, was it the true minor violations that were included in the report? So, you know, there's not enough there for a due process violation of a property interest. And with respect to a liberty interest, to the extent he wants a name-clearing hearing, I guess that claim is in tone. Certainly Judge Thrash looked at it. He doesn't have a right to a pre-termination name-clearing hearing. He does have the obligation to file a writ of mandamus to the extent the procedures are deficient in order to clear his name post-termination. He admittedly never did this. This court in Cotton said that means you fail to state a claim as a matter of law. Furthermore, this issue has never been addressed by the plaintiff or as an appellant. So he's waived it. That's another reason why this appeal will fail. All right. With respect to the claims under Title VII for disparate treatment and hostile work environment, disparate treatment requires some allegation of disparity. What we have here are conclusory allegations of fact that he was treated more harshly. That is not enough to sustain a claim under Iqbal and Twombly. It doesn't, it's not plausible. It's a conclusion. There is, the one case that the appellant cites is a case called Sertain. In Sertain, the district court required the plaintiff to plead elements following the McDonnell-Douglas standard, which of course would apply here, but not at the pleading stage. It's an evidentiary standard. So this court reversed the district court and said you didn't apply Iqbal and Twombly, you applied McDonnell-Douglas, this was wrong. We agree. The case doesn't differ from our argument. We think Iqbal and Twombly should apply here, and in fact did apply here, because of the way this First Amendment complaint was pled. For example, there's no allegation of fact whatsoever that the decision maker harbored any racial animus against the plaintiff. I mean, this is pretty crucial, right? There's no allegation of fact, as Judge Hull intimated earlier, of any comparator, what the comparator did, how the comparator was a true comparator, whether the decision maker was the same or not, whether it's a co-worker or is a supervisor. There's just nothing more here than this suggestion and conclusion that there's disparate treatment. All we know from the complaint is that the plaintiff is black and the plaintiff was fired. If that's the standard, then anybody who's in a protected group can come into court. But it's not the standard, is it? We've got to plead a little bit more. As to the hostile work environment, there's no harassment alleged. There's nothing here that would suggest that this so-called harassment, which I believe is supported by an allegation of white officers being promoted more, if I read the First Amendment complaint correctly. Well, this is not a failure to promote case. But if that is harassing, who did the harassment? Supervisor or co-worker? It's important, as you know. When did this happen? How many times did it happen? This is important to determine whether it's severe or pervasive. What specifically was said? Were there racial epithets? We don't know. It's just a conclusory allegation of fact that is wholly insufficient to support this claim. So I will tell you and conclude my time early and be happy to receive your questions. But there's no way this complaint, this First Amendment complaint, survives. The equal protection argument was probably abandoned on appeal. They didn't really brief it. The hostile work environment claim is not difficult to resolve because there's not enough allegations. But the race claim is troubling because he does, with some detail, say here's the conduct that was violated. Other people had similar conduct and they weren't terminated and so forth. And he argues, well, I can't give you an example because I haven't had discovery yet. And I agree, sir, it's about McDonnell Douglas and so it doesn't answer the question here, which is the only case I could find. All the other cases actually say it's conclusory and dismiss it. Yes, ma'am. But what do you say about the argument? He can't identify. You would agree with me if he said Joe Smith is white, he did the same thing or something similar. He wasn't discharged. You wouldn't be here making this argument, right? I agree with that. I mean, all he had to do was name one person who's white. Well, he had to at least say some facts, whether it was a comparator or whether it was the decision maker, Harvard racial animus because he used the N word. No, let's just do the easiest way. Name Joe Smith and he did a courtesy ride and he wasn't fired. It's one sentence. And he says, I don't want to do that until I get discovery. So that's the argument. How do you address when you're proceeding on similar, on comparators and they just have to be not nearly identical but similar, materially similar, why doesn't he at least get some discovery on that one claim? Because this Court has said repeatedly that that kind of allegation, where you parent the language of the elements of the claim in a conclusory fashion, is insufficient. But how do you know who that is and know exactly what happened without getting the discovery? Open Records Act in this case. That actually may be a good answer for this case. And presumably, the plaintiff would know. He's making the allegation that a white guy was treated differently. He's going to know who that is. He has to have something in mind. Otherwise, it's this ethereal notion that all white people are treated differently. And if it's not a disparate treatment claim but it's a disparate impact claim, which it's not, then he could plead that way. But this is, as I say, it's a paradigm of a conclusory allegation. I agree what's there is conclusory. Okay. The question is, how do you do more in this situation? By knowing more. If you have in your mind as a plaintiff that you're aggrieved because somebody was treated better than you, you know who that somebody is. And if you're so obtuse that you don't, then your lawyer can say, well, we'll do an Open Records Act and we'll find out who that is. Or we suspect that's happening. But he's going to know that Joe Smith was promoted from a corporal to a sergeant. He's going to know that. And he has to plead it. Okay. You've answered my question. Thank you. Okay. Thanks very much, Mr. Bean. Thank you, Your Honours. Respectfully, Your Honour, dealing with your question about how do we find out, internal affairs and discipline are usually confidential and simply saying, well, Joe was treated different than me would not be sufficient in any way, shape, form, or fashion. So without discovery, there's no way that a plaintiff can really prove a disparity of treatment along any lines, race, sex, color, creed. There are some instances that would be so blatant, yes, you could say that. But to establish a pattern as we've alleged in the complaint, you have to have discovery. You can't simply make wild allegations without foundation. And hopefully I would not be guilty of that. As far as the other, I'm glad the counsel conceded that a writ of mandamus never came into this case because Post took care of it later. But that doesn't change the fact that my client lost his certification for an extended period of time and because of false accusations. So respectfully, I'll reserve the last few minutes of my time to answer questions from the Court. Any questions? Any questions? Thanks very much, counsel. Thank you for your argument. Thank you, folks. This Court will be in recess until 9 a.m. tomorrow morning. All rise. Thank you very much.